# EXHIBIT A

BLUME, FORTE, FRIED,
ZERRES & MOLINARI, P.C.
A Professional Corporation
**By: Harris S. Feldman, Esq.    ID#010712003**
One Main Street
Chatham, New Jersey 07928
(973) 635-5400
Attorneys for Plaintiff

| | |
|---|---|
| YOHANNY POLANCO-MITAROTONDA and NICOLA MITAROTONDA, her husband,<br><br>          Plaintiffs,<br><br>               vs.<br><br>CONAGRA BRANDS, INC., BJ'S WHOLESALE CLUB, INC., NICHOLAS SEGEDIN, JOHN DOE 1-10 (a fictitious name representing managers or employees that were responsible for the ordering, stocking, marketing and/or sales of products), ABC CORP. 1-10 (a fictitious name representing a class of fictitious defendants who designed, manufactured, assembled, marketed or sold the product or a component of the product), XYZ CORP. 1-10 (a fictitious name representing a class of fictitious defendants who sold, distributed or advertised the product),<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – ESSEX COUNTY DOCKET NO.: ESX-L-<br><br>          CIVIL ACTION<br><br>    COMPLAINT, JURY DEMAND, DESIGNATION OF TRIAL COUNSEL, DEMAND FOR INSURANCE INFORMATION, DEMAND FOR DOCUMENTS, DEMAND FOR INTERROGATORIES, REJECTION OF ANY NOTICES OF ALLOCATION, AND CERTIFICATION |

Plaintiffs, YOHANNY POLANCO-MITAROTONDA and NICOLA MITAROTONDA, residing at 91 Humboldt Street, in East Rutherford, New Jersey, by way of Complaint says:

## FIRST COUNT

1.    On or about February 22, 2019, the plaintiff, YOHANNY POLANCO-MITAROTONDA, was in her home at 91 Humboldt Street, East Rutherford, New Jersey cooking on her stove.

2.    While cooking, a can of Wellsley Farms Cooking Spray, which plaintiff purchased at BJ'S WHOLESALE CLUB in Rutherford New Jersey, released its contents which caught fire, and caused serious and permanent injuries to YOHANNY POLANCO-MITAROTONDA, including burns.

3.    The explosion and the plaintiff's injuries were caused by defects in the Wellsley Farms Cooking Spray can, designed, manufactured and distributed by CONAGRA BRANDS, INC., for BJ'S WHOLESALE CLUB, INC.

4.    "Wellsley Farms" is a brand name owned and operated by BJ'S WHOLESALE CLUB, INC., for the purpose of selling products manufactured by other companies in physical BJ's Wholesale Club stores and on BJ's Wholesale Club online store as well as other online retailers across the State of New Jersey and Essex County.

5.    At all times relevant to this complaint, Defendant CONAGRA FOODS, INC. was a Delaware corporation with its principal place of business in Chicago, Illinois. It is currently a registered trade name for Defendant CONAGRA BRANDS, INC.

6.    At all times relevant to this complaint, Defendant CONAGRA BRANDS, INC. was a Delaware corporation with its principal

place of business in Chicago, Illinois. It was formerly known as CONAGRA FOODS, INC.

7.     Defendant CONAGRA BRANDS, INC. is the successor in interest to CONAGRA FOODS, INC.

8.     At all times relevant to this complaint, CONAGRA BRANDS, INC. and/or CONAGRA FOODS, INC., did continually conduct business across the State of New Jersey including Essex County, making venue proper here.

9.     Defendant BJ'S WHOLESALE CLUB, INC., is a Delaware corporation with headquarters located at 25 Research Drive, Westborough, Massachusetts, and does business throughout the State of New Jersey through its physical stores, as well as through its online sales of the Wellsley Farms brand, in particular in Essex County making venue proper here.

10.    Defendant BJ'S WHOLESALE CLUB, INC., did and continues to operate a BJ's Wholesale Club at 300 Route 17 North, East Rutherford, New Jersey where plaintiff purchased the can of Wellsley Farms Cooking Spray.

11.    Defendant NICHOLAS SEGEDIN and/or JOHN DOE 1-10 (a fictitious name representing managers or employees that were responsible for the ordering, stocking, marketing and/or sales of products) were at the relevant times employed by BJ's Wholesale Club at 300 Route 17 North, East Rutherford, New Jersey and is a resident of the State of New Jersey, were responsible for the

ordering, stocking, marketing and sale of the can of Wellsley Farms Cooking Spray.

12.   As a direct result of defects in the product designed, manufactured, sold and/or marketed by said defendants, plaintiff sustained serious, painful and permanent injuries on the aforementioned date, will in the future experience great pain and suffering, was caused to incur expenses for medical care and attention, will in the future incur additional expenses, has lost physical ability, time from work in the past and future, and has in the past, and will in the future, lose her right to the full enjoyment of life.

**WHEREFORE**, plaintiffs, demand judgment for damages against defendant(s) CONAGRA BRANDS, INC., BJ'S WHOLESALE CLUB, INC., NICHOLAS SEGEDIN, JOHN DOE 1-10, ABC CORP. 1-10, XYZ CORP. 1-10, together with interest and costs of suit.

## SECOND COUNT

1.   Plaintiffs repeat each and every allegation of the prior counts as though set forth herein at length and make them a part hereof.

2.   At all times relevant to the allegations in this complaint, Defendants were and are in the business of designing, manufacturing, assembling, testing, filling, labeling, advertising and promoting the sale of various food brands, including WELLSLEY FARMS Cooking Spray.

3.     Defendants designed, manufactured, tested, filled, labeled and/or sold the canister of WELLSLEY FARMS Cooking Spray that exploded and is at issue in this case.

4.     The canister of WELLSLEY FARMS Cooking Spray at issue was designed and manufactured with u-shaped vents on the domed bottom of the canister that were designed to open when the can buckled or when the bottom of the canister became convex instead of concave.

5.     The canister of WELLSLEY FARMS Cooking Spray at issue was designed and manufactured so that when the can deformed and the u-shaped vents on the bottom of the canister opened, the internal contents of the canister would release through the vents and the pressure inside the can would be reduced.

6.     The contents of the canister of WELLSLEY FARMS Cooking Spray at issue included not only cooking oil, but also propellants, including extremely flammable materials such as propane and butane.

7.     Defendants designed, manufactured, tested, filled, labeled, promoted and/or sold WELLSLEY FARMS Cooking Spray for use in consumer and commercial kitchens as well as in other environments such as cookouts and grilling.

8.     The WELLSLEY FARMS Cooking Spray reached Plaintiffs without substantial change in its condition and was stored and

used in a reasonably foreseeable manner at the time and prior to the incident in question.

9. The canister of WELLSLEY FARMS Cooking Spray began spraying its extremely flammable contents through the u-shaped vents on the bottom of the can and exploded into flames, causing burns and injuries to Plaintiff and igniting a fire.

10. The WELLSLEY FARMS Cooking Spray did not meet the consumer expectations of reasonably foreseeable users of the product including the plaintiff.

11. **WHEREFORE**, plaintiffs, demand judgment for damages against defendant(s) CONAGRA BRANDS, INC., BJ'S WHOLESALE CLUB, INC., NICHOLAS SEGEDIN, JOHN DOE 1-10, ABC CORP. 1-10, XYZ CORP. 1-10, together with interest and costs of suit.

## THIRD COUNT

1. Plaintiffs repeat each and every allegation of the prior counts as though set forth herein at length and makes them a part hereof.

2. Defendants have a duty to place into the stream of commerce, manufacture, test, fill, label, distribute, market, promote, and sell WELLSLEY FARMS Cooking Spray and products that are not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

3.    Defendants did in fact design, manufacture, test, fill, label, market, promote, supply, distribute and/or sell WELLSLEY FARMS Cooking Spray to consumers, including Plaintiffs.

4.    Defendants expected the WELLSLEY FARMS Cooking Spray it was designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers in multiple states, including Plaintiffs, without substantial change in the condition.

5.    At the time the WELLSLEY FARMS Cooking Spray left the possession of Defendants and the time the WELLSLEY FARMS Cooking Spray entered the stream of commerce, the WELLSLEY FARMS Cooking Spray was in a defective, unsafe and unreasonably dangerous condition. These defects include but are not limited to the following:

a.    The WELLSLEY FARMS Cooking Spray contains vents, metal thickness and other design features that make the container capable of releasing its contents under conditions where other cooking spray can designs do not have such risk;

b.    The WELLSLEY FARMS Cooking Spray was capable of releasing its contents at temperatures and pressures lower than Defendants' specifications and/or performance standards allow;

c.    The WELLSLEY FARMS Cooking Spray was capable of releasing its contents at temperatures and pressures lower than Defendants' other cooking spray can designs;

d.    The WELLSLEY FARMS Cooking Spray was capable of releasing dangerous contents when other cooking spray can designs do not have such risk;

e.  The WELLSLEY FARMS Cooking Spray used flammable and dangerous propellants that posed an unreasonable and unnecessary danger when other propellants do not have such risk;

f.  The WELLSLEY FARMS Cooking Spray was not designed to withstand temperatures to which the WELLSLEY FARMS Cooking Spray container will foreseeably to be exposed during use and/or storage;

g.  The WELLSLEY FARMS Cooking Spray releases its contents in an uncontrolled and rapid manner posing an unreasonable and unnecessary danger when other cooking spray can designs do not have such risk;

h.  The WELLSLEY FARMS Cooking Spray releases its contents simultaneously with the can everting which poses an unreasonable and unnecessary danger and no warning to those in its vicinity when other cooking spray can designs do not have such risk;

i.  Safer alternative cooking spray can designs existed that do not present the same risks associated with the WELLSLEY FARMS Cooking Spray;

j.  Any alleged benefits of the WELLSLEY FARMS Cooking Spray are outweighed by the risks of the WELLSLEY FARMS Cooking Spray releasing their dangerous contents;

k.  The dangers associated with the WELLSLEY FARMS Cooking Spray outweigh any alleged utility in the WELLSLEY FARMS Cooking Spray's design. The nature and magnitude of the risk of the can venting and causing a fire was high in light of the intended and reasonably foreseeable uses of the products in and around heat sources in the kitchen, including stoves;

l.  The likelihood that product users were aware of this risk was low, given that the product was designed and advertised to be used around stoves, and had no adequate warnings about possible dangers of doing so;

m.  The likelihood of the WELLSLEY FARMS Cooking Spray causing and/or contributing to a fire due to venting was high in light of the intended and reasonably foreseeable use of the WELLSLEY FARMS Cooking Spray product around stoves and other heating sources;

n.  The flammability of the WELLSLEY FARMS Cooking Spray product's ingredients and the WELLSLEY FARMS Cooking Spray product's risk of venting were more dangerous than a reasonably prudent consumer would expect when used in the intended and reasonably foreseeable manner of cooking;

o.  At the time it left the control of the manufacturer, in the state of technical and scientific knowledge, reasonable and safer alternative designs were available with respect to the flammability of the ingredients, and alternative can designs would have prevented the venting event and the injuries in this case without substantially impairing the usefulness of the intended purposes of the product; and

p.  Were otherwise defective, unsafe and unreasonably dangerous and did not meet foreseeable consumer's expectations.

6.  Upon information and belief, prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

7.  Upon information and belief, prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

8.  Upon information and belief, prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

9.    Upon information and belief, prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

10.   Upon information and belief, prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents during reasonably foreseeable uses.

11.   At all times relevant to this complaint, Plaintiffs used the WELLSLEY FARMS Cooking Spray for its intended purpose, i.e. cooking spray, and stored it foreseeably and appropriately. There was no other reasonable cause of the WELLSLEY FARMS Cooking Spray's failure to properly perform other than the WELLSLEY FARMS Cooking Spray product being defective.

12.   Plaintiffs could not have discovered any defect in the WELLSLEY FARMS Cooking Spray through the exercise of due care.

13.   Defendants, as designers, manufacturers, fillers, researchers, testers, inspectors, marketers, promoters, suppliers, distributors and sellers of food products are strictly liable for defects in design, manufacture, marketing, failure to warn and failure to recall.

14.   Plaintiffs did not have substantially the same knowledge regarding the dangers of the WELLSLEY FARMS Cooking Spray as the designers, manufacturers, fillers, researchers, testers,

inspectors, marketers, promoters, suppliers, distributors and sellers.

15. Defendants in directly designing, manufacturing, filling, researching, testing, inspecting, marketing, promoting, supplying, distributing, and/or selling its product, WELLSLEY FARMS Cooking Spray, to Plaintiffs did so without adequate warning regarding the hazardous potential of its product.

16. Due to the conduct of the Defendants, the WELLSLEY FARMS Cooking Spray canister exploded, and Plaintiff YOHANNY POLANCO-MITAROTONDA was caused to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiffs also suffered great pain and anguish in both mind and body. Plaintiffs were hindered and prevented from Plaintiffs' usual and customary duties and affairs. Plaintiffs will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiffs were also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiffs were unable to and will in the future be unable to attend to Plaintiffs' normal affairs and duties for an indefinite period of time.

17. Pursuant to N.J.S.A. 2A:58-C, et seq., (New Jersey Products Liability Act) Plaintiffs assert all claims and causes of action against the Defendants, including, but not limited to, breach of express warranties, strict liability, all claims and causes of actions pertaining to design, manufacture, sale and distribution of the defective WELLSLEY FARMS Cooking Spray which was not reasonably fit, suitable or safe for its intended purpose as it was defectively designed, manufactured, and/or failed to contain adequate warnings and/or instructions.

**WHEREFORE**, plaintiffs, demand judgment for damages against defendant(s) CONAGRA BRANDS, INC., BJ'S WHOLESALE CLUB, INC., NICHOLAS SEGEDIN, JOHN DOE 1-10, ABC CORP. 1-10, XYZ CORP. 1-10, together with interest and costs of suit.

## FOURTH COUNT

1. Plaintiffs repeat each and every allegation of the prior counts as though set forth herein at length and makes them a part hereof.

2. Pursuant to N.J.S.A. 2A:58C-2, the Defendants are liable to the Plaintiffs because the defendant's design did not comply with express warranties, in that the product designed, was not fit for the uses it was advertised.

**WHEREFORE**, plaintiffs, demand judgment for damages against defendant(s) CONAGRA BRANDS, INC., BJ'S WHOLESALE CLUB, INC.,

NICHOLAS SEGEDIN, JOHN DOE 1-10, ABC CORP. 1-10, XYZ CORP. 1-10,
together with interest and costs of suit.

## FIFTH COUNT

1.  Plaintiffs repeat each and every allegation of the prior
counts as though set forth herein at length and makes them a part
hereof.

2. At all times relevant, it was the duty of Defendants to
adequately, test, label, market, promote, supply, distribute
and/or sell WELLSLEY FARMS Cooking Spray products such that they
would be reasonably safe for their intended use and would
conform with the reasonable expectations of users.

3. Defendants misrepresentations, failure to adequately
warn, and protect from the dangers in its product includes but
is not limited to the following:

      a.   Failed to appropriately inform users of the
dangers associated with the WELLSLEY FARMS
Cooking Spray;

      b.   Withheld and/or misrepresented material facts
regarding the WELLSLEY FARMS Cooking Spray's
safety and fitness for use around stoves and
other heating sources when in fact they are not
safe for use in these areas;

      c.   Misrepresented material facts regarding the
WELLSLEY FARMS Cooking Spray's safety by
withholding information regarding adverse events
and information about incidents of venting and
injury caused by the cans;

      d.   After receiving post-marketing incident
reports and/or testing data, Defendants knew, or
in the exercise of reasonable care, should have

known that there was a significant risk of venting, fire, and burn injuries associated with the use and/or storage of the WELLSLEY FARMS Cooking Spray product and failed to communicate or warn users of this information;

e.    Failed to halt the use of dangerous, flammable and/or combustible propellants in WELLSLEY FARMS Cooking Spray when it knew they were dangerous;

f.    Continued to use dangerous, flammable and/or combustible propellants in WELLSLEY FARMS Cooking Spray in the United States when it knew they were dangerous and had been prohibited from using the same propellants in cooking spray containers outside the United States;

g.    Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the WELLSLEY FARMS Cooking Spray product would use the product in the kitchen and in close proximity to stoves, grills and heat sources;

h.    Inadequately designing the WELLSLEY FARMS Cooking Spray warnings so that they fail to appropriately inform users of the information necessary to safely store and use the product without risk of releasing contents or causing an explosion or fire;

i.    Failed to provide adequate warnings concerning the risk of venting, risk of fire, and risk of burn injuries;

j.    Failed to provide adequate warnings concerning the types of propellants in the WELLSLEY FARMS Cooking Spray product including isobutane and propane;

k.    Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the WELLSLEY FARMS Cooking Spray product;

l.   Failed to provide adequate instructions to persons cooking with and around their WELLSLEY FARMS Cooking Spray products;

m.   Failed to provide adequate instructions concerning safe and/or safer methods of cooking with and around WELLSLEY FARMS Cooking Spray products;

n.   Failed to conduct adequate testing on their WELLSLEY FARMS Cooking Spray products to determine the venting hazards to which consumers and individuals such as Plaintiffs may be exposed to while cooking with and/or around their products;

o.   Failed to monitor and analyze what post-marketing reports observed with regard to individuals cooking with and around WELLSLEY FARMS Cooking S pray and/or substantially similar products;

4.   Defendants knew or had reason to know that Plaintiffs, as members of the general public for whose use the WELLSLEY FARMS Cooking Spray was placed into interstate commerce, would be likely to use or be around the WELLSLEY FARMS Cooking Spray in a manner described in this Complaint.

5.   Prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

6.   Prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing

their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

7.    Prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

8.    Prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

9.    Prior to the incident set forth herein, Defendants were aware of DOT-2Q vented cooking spray containers releasing their contents during reasonably foreseeable uses

10.   Defendants knew or reasonably should have known of the danger associated with the manner and circumstances of Plaintiffs' presence in the vicinity of and/or foreseeable use of the WELLSLEY FARMS Cooking Spray, which danger would not be obvious to the general public.

11.   Plaintiffs used the WELLSLEY FARMS Cooking Spray in a reasonably foreseeable manner.

12.   Defendants, as designers, manufacturers, fillers, researchers, testers, inspectors, marketers, promoters, suppliers, distributors and sellers of food products are held to the level of knowledge of an expert in their field.

13.  Plaintiffs did not have substantially the same knowledge regarding the dangers of the WELLSLEY FARMS Cooking Spray as the designer, manufacturer, filler, researcher, inspector, marketer, promoter, supplier, distributor and seller: ConAgra Foods, Inc. and Conagra Brands, Inc.

14.  As a direct and proximate cause of one or more of the foregoing acts or omissions by Defendants, the WELLSLEY FARMS Cooking Spray canister exploded and Plaintiff YOHANNY POLANCO-MITAROTONDA was caused to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiffs also suffered great pain and anguish in both mind and body. Plaintiffs were hindered and prevented from Plaintiffs' usual and customary duties and affairs.  Plaintiffs will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiffs were also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiffs were unable to and will in the future be unable to attend to Plaintiffs' normal affairs and duties for an indefinite period of time.

    **WHEREFORE**, plaintiffs, demand judgment for damages against defendant(s) CONAGRA BRANDS, INC., BJ'S WHOLESALE CLUB, INC., NICHOLAS SEGEDIN, JOHN DOE 1-10, ABC CORP. 1-10, XYZ CORP. 1-10, together with interest and costs of suit.

**<u>SIXTH COUNT</u>**

  1. Plaintiff repeats each and every allegation of the prior counts as though set forth herein at length and make them a part hereof.

  2. Defendants, were aware of the hazard that existed in its/their Wellsley Farms Cooking Spray and was/were also aware of the danger that was caused by the hazard to the users of its/their Wellsley Farms Cooking Spray aerosol can, however, defendants failed and refused to design the product so as to eliminate the hazard, or to guard against the hazard and danger, and/or to warn the users of the hazard and danger and/or failed to recall the product.

  3. Defendant(s) conduct was/were willful and wonton in nature and constituted gross negligence and exposed the plaintiff and those similarly situated to the plaintiff to serious injury and death.

  4. Defendant(s) knew or should have known of the defects in the product and failed to remedy the defect.

**WHEREFORE**, plaintiffs, demand judgment for punitive damages against defendant(s) CONAGRA BRANDS, INC., BJ'S WHOLESALE CLUB, INC., NICHOLAS SEGEDIN, JOHN DOE 1-10, ABC CORP. 1-10, XYZ CORP. 1-10, together with interest and costs of suit.

### SEVENTH COUNT

1.    Plaintiff repeats each and every allegation of the prior counts as though set forth herein at length and makes them a part hereof.

2.    At all times hereinbefore and hereinafter mentioned, plaintiff NICOLA MITAROTONDA, was and still is the spouse of the injured plaintiff, YOHANNY POLANCO-MITAROTONDA, and as such is entitled to her services, support, society, companionship, love, solace and more.

3.    By reason of the injuries sustained by plaintiff, YOHANNY POLANCO-MITAROTONDA, and as a result of the negligence, recklessness and carelessness of the defendant aforesaid, plaintiff NICOLA MITAROTONDA, has been and will in the future be deprived of her support, society, companionship, love, solace, consortium, services and more.

4.    Plaintiff NICOLA MITAROTONDA, was present for and did witness the explosion caused by the defendant's aforesaid conduct and suffered severe emotional distress as a result of witnessing her injuries.

5.      Plaintiff NICOLA MITAROTONDA, was present when the aforesaid defects in the product caused an explosion and suffered emotional and conscious pain and suffering as a result.

**WHEREFORE**, plaintiffs, demand judgment for damages against defendant(s) CONAGRA BRANDS, INC., BJ'S WHOLESALE CLUB, INC., NICHOLAS SEGEDIN, JOHN DOE 1-10, ABC CORP. 1-10, XYZ CORP. 1-10, together with interest and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues involved herein.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R.4:25-4, HARRIS S. FELDMAN, Esq., has been designated as trial counsel in the above matter.

## DEMAND FOR INSURANCE COVERAGE

In accordance with R. 4:10-2, defendants are demanded to provide a complete copy of their applicable liability insurance policies including any excess or umbrella policies with declaration sheets within thirty (30) days of service of this Complaint.

## DEMAND FOR INTERROGATORIES

Plaintiff demands that defendants answer Form C and Form C(4) Uniform Interrogatories, (and the supplemental interrogatories

that will be served) within the time prescribed by the Rules of Court.

## REJECTION OF ANY NOTICES OF ALLOCATION

Plaintiff rejects any Notice of Allocation asserted by any defendant, whether made pursuant to R. 4:7-5 or otherwise. Plaintiff insists that the details upon which any claim of allocation is based be provided to plaintiff in a timely manner in discovery as is required by <u>Young v. Latta</u>, 123 N.J. 584 (1991).

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any Court or a pending Arbitration proceeding, nor is any other action or Arbitration proceeding contemplated. All parties known to plaintiff at this time who should have been joined in this action, have been joined.

BLUME, FORTE, FRIED,
ZERRES & MOLINARI, P.C.
Attorneys for Plaintiff

By_____
    HARRIS S. FELDMAN

DATED: November 10, 2020

# Civil Case Information Statement

**Case Details: ESSEX | Civil Part Docket# L-008057-20**

**Case Caption:** POLANCO-MITAROTONDA YOHANY  VS
CONAGRA BRANDS, IN

**Case Initiation Date:** 11/24/2020

**Attorney Name:** HARRIS SCOTT FELDMAN

**Firm Name:** BLUME FORTE FRIED ZERRES & MOLINARI

**Address:** ONE MAIN ST

CHATHAM TWP NJ 07928

**Phone:** 9736355400

**Name of Party:** PLAINTIFF : Polanco-Mitarotonda, Yohany

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** PERSONAL INJURY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Yohany Polanco-
Mitarotonda?** NO

**Are sexual abuse claims alleged by: NICOLA MITAROTONDA?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

| | |
|---|---|
| 11/24/2020 | /s/ HARRIS SCOTT FELDMAN |
| Dated | Signed |